# EXHIBIT C

Confidential Document - F.O.I.A. Exempt
3rd Party Disclosures Not Authorized

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| Mark Scott | ) | **DOCKET NO.: CR-05-00414-01** |

**Prepared For:**    Paul L. Friedman
United States District Judge

**Prepared By:**    Michael Penders
United States Probation Officer
(202) 565-1379

**Prosecuting Attorney**
Catherine K. Connelly
555 4th Street, NW
Washington, DC 20530
(202) 616-3384

**Defense Counsel**
Tony Lenell Axam
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500

**Sentence Date:**    04/19/2006, at 9:30am

**Offenses:**    Count 1:    Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year {18 USC § 922(g)(1) and § 924(a)(2)} 10 years confinement and/or $250,000 fine

Count 2:    Attempted First Degree Sexual Abuse {22 DCC §§ 3002(1) and 3018} 15 years confinement and/or $125,000 fine

**Release Status:**    Held without bond since his arrest on 06/01/2005.

**Detainers:**    US Parole Commission

**Codefendants:**    None

**Related Cases:**    None

**Date Report Prepared:** 03/10/2006        **Date Report Revised:**

**SCOTT, Mark**                                                                 **Page 2**

**<u>Identifying Data</u>**

| | |
|---|---|
| **Legal Name:** | Mark Haywood Scott |
| **Date of Birth:** | ███ 1967 |
| **Age:** | 38 |
| **Race:** | Black/non-Hispanic |
| **Sex:** | Male |



**PACTS# 18783**

| | |
|---|---|
| **SSN:** | |
| **FBI No.:** | |
| **U.S. Marshal No.:** | |
| **Other ID No.:** | PDID# ████ |
| | DCDC# ████ |
| | Maryland ID# ████ |



| | |
|---|---|
| **Marital Status:** | Single |
| **Education:** | High School Graduate |
| **Dependents:** | 0 |
| **Citizenship:** | United States |
| **Legal Address:** | ██████████ |
| | Washington, DC 20018 |
| **Telephone #:** | ██████ |
| **Aliases:** | Heyward Scott |
| | Patrick Stanley |

**Restrictions on Use and Redisclosure of Presentence Investigation Report.** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorists activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**SCOTT, Mark**                                                                                              **Page 3**

**PART A. THE OFFENSE**

### Charge(s) and Conviction(s)

1.  On 11/17/2005, a federal grand jury in the District of Columbia returned a one-count Indictment against Mark Scott. The Indictment charged the defendant with **Count 1)** Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year, 18 USC § 922(g)(1). The criminal conduct set forth in the Indictment occurred on 05/31/2005.

2.  On 01/26/2006, the United States Attorney's Office filed a two-count Superseding Information against Mark Scott, in the United States District Court for the District of Columbia. The Superseding Information charged the defendant with **Count 1)** Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, 18 USC §§ 922(g)(1) and 924(a)(2); and **Count 2)** Attempted First Degree Sexual Abuse, 22 DCC §§ 3002(1) and 3018. The criminal conduct set forth in this Superseding Information occurred on 05/31/2005 for Count 1 and from 05/30/2005 to 05/31/2005 fo Count 2.

3.  On 01/26/2006, the defendant pled guilty to Counts 1 and 2 of the Superseding Information. Under the terms of his plea agreement, Mr. Scott agreed the conviction for Count 1 exposed him to not more than ten years imprisonment, followed by three years supervised release, a fine of not more than $250,000 or both, and a special assessment of $100. For Count 2, he acknowledged he is exposed to not more than fifteen years imprisonment, three years supervised release, a fine of not more than $125,000, and a $100 assessment due to the Victims of Violent Crime Compensation Fund (VVCC).

4.  Mr. Scott agreed not to contest the administrative forfeiture of the firearm seized in this case. The defendant understood that he will not be allowed to withdraw his guilty plea based solely on the sentence imposed by the Court. Mr. Scott acknowledged that the government is not obligated, and does not intend to file any downward departure motions, and he agreed not to seek any downward departures from the otherwise applicable guideline range. Mr. Scott agreed the charges to be dismissed in DC Superior Court case F-3059-05, were based in fact.

5.  The government agreed not to forego seeking any increases in the defendant's base offense level. They also agreed to dismiss DC Superior Court case F-3059-05. The government agreed to allocute for a sentence at the low end of the guideline range for the offense of conviction on Count 1. They reserved their full fight of allocution for the offense of conviction on Count 2.

6.  The defendant was arrested on 06/01/2005, and a grand jury for the Superior Court of the District of Columbia returned a thirteen count indictment on 08/31/2005. The defendant has been held without bond since his arrest.

SCOTT, Mark                                                                            **Page 4**

### The Offense Conduct

7.  On 05/30/2005, at approximately 11:30 pm, the defendant saw Kimberly Willis, his former girlfriend and mother of his three-year-old child, standing at a bus stop near the corner of Minnesota and Pennsylvania Avenues, SE, Washington, DC. The defendant pulled up to Ms. Willis in a van and forced her into the van by grabbing and choking her neck and assaulting her. The defendant told Ms. Willis he was going to shoot and kill her. The defendant eventually closed the vehicle door on the victim's legs. He proceeded to drive Ms. Willis to ████████████████████ Washington, DC, where the defendant was living with his sister, Kelly Hayes. While in the parking lot of the apartment complex on Jay Street, a marked police cruiser drove by, prompting the defendant to tell Ms. Willis that he would kill her and the police officer if the officer approached them. Ms. Willis had reason to believe the defendant's threats because she knew him to carry a gun in the past.

8.  The police officer did not confront the defendant, and Scott proceeded to take Ms. Willis inside apartment ████. Once inside the apartment, the defendant was observed by Ms. Willis speaking to his sister and her boyfriend inside the bedroom of the apartment. The defendant returned to the living room and he and Ms. Willis talked for a while. The defendant tried to coerce Ms. Willis into getting back together with him, but she refused to do so. Sometime after midnight, in the early morning of 05/31/2005, the defendant removed a shotgun from underneath the sofa in the living room, pointed it at Ms. Willis' head, and ordered her to perform oral sex on him. Ms. Willis feared for her life and complied with the defendant's demands. The defendant then ordered the victim to remove her clothing, and again fearing for her life the victim complied. The defendant then raped the victim by forcing her to engage in vaginal and anal intercourse.

9.  During the sexual assault, the defendant repeatedly threatened to kill the victim if she did not comply with his demands. At one point the victim asked to leave, and the defendant informed her the only place she would be going to is Harmony Cemetery[1]. Again fearing for her life, Ms. Willis agreed to stay in the apartment.

10. Around 1:00 pm on 05/31/2005, the defendant drove Ms. Willis to her home and left with their 3-year-old daughter, taking her to a scheduled doctor's appointment. Immediately after the defendant left her apartment, Ms. Willis reported the kidnaping and assault to her sister and a friend, and one of them notified the police of the incident. After being interviewed by the police Ms. Willis was transported to Howard University Hospital for examination. While she was waiting at Howard University Hospital, the defendant called her and asked why she was pressing charges against him. The defendant was arrested a gave a video taped statement in which he asserted his sexual contacts with the victim were consensual.

---

[1]Harmony Cemetery is located in Landover, Maryland.

SCOTT, Mark                                                                      **Page 5**

11.     On 06/01/2005, members of the Metropolitan Police Department (MPD) went to ▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮, Washington, DC to arrest the defendant. They received written
        consent from the defendant's sister, to search the apartment. The defendant instructed his
        sister to give the officers his shotgun. The officers recovered a 12-gauge Maverick model
        88 shotgun from underneath the sofa in the living room, along with 23 shotgun shells.

## Victim Impact

12.     We have identified Ms. Kimberly Willis as the victim in this case. As of the date of
        disclosure of this report, the probation office is awaiting information from the US
        Attorney's Office with respect to the identified victim.

13.     We have been able to obtain information relating to the defendant's prolonged threats of
        violence involving the victim. The defendant was incarcerated at DC Jail and
        subsequently in Fairton, New Jersey from 03/2004 to 10/2004. During that period, Scott
        mailed many letters to Ms. Willis in which he expressed his desire to marry her and in
        which he threatened her with adverse consequences should she reject him. The following
        are selected excerpts from the letters sent to the victim[2]:

> 03/01/2004- You said you don't want me no more...You never wanted me at all, you weighted to I
> was in jail to say what you said to me. Yes I'm hurt but God will help me I pray because all this
> time I felt you was seeing someone you will pay for all you have done wrong to me...I really
> wanted to marry you when I get out but now I see what's happening to me I'm going to church
> when I get out and I'm going to stay to myself forever and if someone sees me or say something to
> me wrong I'm going to kill them off...

> 03/18/2004- What's up Kim you have not been to see me what's going on at home...When I try to
> call there it saying a block is on the phone I want to know what's really going on there Kim the
> truth don't play with me Kim you know I'm in jail and I'm not feeling to good at all Kim, I'm
> starting to get mad.

> 04/29/2004- You know I will kill over you and my baby when I talked to you on the phone I
> wanted to say to you I love you and no body else and will never give you up. I will die first so you
> know what I'm saying to you in this letter and all I want you to say is yes, yes, yes, yes to me Kim
> you make me so mad at times..Like I told you Kim, my love is writing in blood so just marry me
> that's all and on Sundays go to church together Kim...And if you tell me no you won't marry me
> Kim when I come home I'm going crazy right off the back because this is all I want is for us to
> marry together that's all. You do this things will be good and OK but if hell will brake out I will
> not stop Kim because wants it starts and you say OK I'm not because now I told you in this letter
> so if you don't want shit happening marry me I'm not playing at all with no on . I will do what it
> takes to get what I want and will kill to get it that means every and anybody that stands in my way
> of having you. Anybody stands between me and you I'm killing off the back...This is in Red Blood
> I will never lover another woman every but you Kimberly Scott...On my left arm on my showder
> the four tattoos are dead men who thought they could fuck with me.

> 05/20/2004- (this letter is addressed to the victim but purports to be written to their 3-year old
> daughter) I'm going to kill myself to get it over because your mother and I keep on being made at

---

[2] In the foregoing letters, the defendant addressed his letter to "Kimberly Scott," not Kimberly Willis.

each other and that's bad I be want to kill her but I really lover her from my hart and she just don't know how much I miss her and care...This is my final letter to you ever (daughter's name). I'm going to poison myself to make sure I get it right I will not be coming home because I killed myself in jail over your mother.

05/20/2004- I will be fucked up with you to you say yes to me and mean it from your soul and hart or the fraud will go on forever. Like I said I have shit to loose now all I have is get backs. I mean what I say in all my letter to you do what I ask of you and if you don't do what I ask of you Marie (Ms. Willis' middle name) you and (daughter) will pay the price because you said she was mine but you was fucking around on me all this time but I never fucked around on you at all because I wanted to marry you so bad but now I'm made as shit and will hurt you really now because of all this shit you have done to me and said to me got me fucked up. All I want is to get you now. And if you don' come to see me on Thursday before I go to the Fed when I get out I will find you and kill you for everything you did to me wrong and the whole time I was in jail I said I don't have shit to loose now so if you don't want beefing or killing to happen you better come to talk to me on Thursday....

05/20/2004- (note this is the 3rd letter postmarked on 05/20/2004) See you really never cared about me for real but that's all right because when I do get out everybody that treated me wrong they all will be so so sorry...You don't do shit for me at all, all you do is come see me when you want too or fill like it and when you do see me you talk shit because I'm locked up but that's so good because when I do get out it's on you. Run your mouth to much and you is still fucking around have fun when you see me. When I get out the games will begin who ever gets killed just get killed, who ever in my way..I'm got going to call you a bitch or a ho I'm just going to show you what I mean that's all.....I'm a killer for life that's all I do kill kill kill kill kill kill kill yes. P.S. Killer MS

10/22/2004- I know you don't love me know more..I loved you more than I ever love anybody or thing in my life. And now it's all gone. All I ever want was a wife like you and a daughter like baby girl and we be a real family but I know you don't want that from me...All that I say to you Kimberly is the God's truth and you don't have to marry me now but that's what I dreamed for but it will never happen for me.

### Adjustment for Obstruction of Justice

14.  We do not have any information suggesting Mr. Scott impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

15.  During the presentence interview conducted on 02/15/2006, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea.

### Offense Level Computation

16.  We used the 2005 edition of the Guidelines Manual.

17.  Count 1 - Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, 18 USC §§ 922(g)(1) and 924(a)(2).

SCOTT, Mark                                                                   Page 7

18.   <u>Count 2</u> - Effective 06/14/2004, voluntary guidelines are in effect for all pleas and
      verdicts in the Superior Court of the District of Columbia. The guidelines apply for
      felony offenses only. The charge of Attempted First Degree Sexual Abuse is classified as
      a Group 6 offense under the DC Guidelines.

19.   **Base Offense Level:** According to the Cross Reference under USSG            **<u>32</u>**
      §2K2.1(c)(1), if the defendant used or possessed any firearm in connection with
      the commission or attempted commission of another offense, or possessed or
      transferred a firearm or ammunition with knowledge or intent that it would be
      used or possessed in connection with another offense, apply - (A) USSG §2X1.1
      (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the
      resulting offense level is greater than that determined above; or (B) if death
      resulted, the most analogous offense guideline from Chapter Two, Part A,
      Subpart 1 (Homicide), if the resulting offense level is greater than determined
      above.

20.   Under USSG § 2X1.1, comment. (n.3), if the substantive offense is not covered
      by a specific guideline, see USSG § 2X5.1. According to USSG § 2X5.1, if the
      offense is a felony or Class A misdemeanor for which no guideline expressly has
      been promulgated, apply the most analogous offense guideline. We determined
      the most analogous guideline is USSG § 2A4.1(a), and the base offense level is
      32. USSG §2A4.1(a).

21.   **Specific Offense Characteristic:** The defendant pointed the shotgun at the       **<u>+2</u>**
      victim's head in a threatening manner, causing the victim to fear for her life.
      USSG §2A4.1(b)(3).

22.   **Specific Offense Characteristic:** The victim was sexually assaulted vaginally     **<u>+6</u>**
      and forced to perform oral sex on the defendant. USSG §2A4.1(b)(5).

23.   **Victim Related Adjustments:** None.                                               **<u>0</u>**

24.   **Adjustment for Role in the Offense:** None.                                       **<u>0</u>**

25.   **Adjustment for Obstruction of Justice:** None.                                    **<u>0</u>**

26.   **Adjusted Offense Level (Subtotal):**                                             **<u>40</u>**

27.   **Chapter Four Enhancements:** None.                                                **<u>0</u>**

28.   **Adjustment for Acceptance of Responsibility:** The defendant demonstrated an      **<u>-3</u>**
      acceptance of responsibility for the offense of conviction, and the adjusted
      offense level was decreased by two levels. USSG §3E1.1(a). In addition, the
      defendant assisted authorities in the investigation/prosecution of the misconduct
      by timely notifying authorities of his intent to enter a plea of guilty and the

SCOTT, Mark                                                                                    Page 8

government has filed a motion or indicated it intends to file a motion acknowledging the defendant's actions. As a result, the adjusted offense level was decreased by an additional one level. USSG §3E1.1(b).

29.    **Total Offense Level:**                                                                **37**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

30.    <u>Count 2</u>: The DC Sentencing Commission developed a series of rules for calculating criminal history. The criminal history score depends on two factors. First, the number and severity of prior convictions and adjudications. Second, the length of time between the imposition or expiration of the last sentence and the commission of the instant offense.

### Juvenile Adjudication(s)

31.    None known.

### Adult Criminal Conviction(s)

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pnt./ DC Pnt. |
|---|---|---|---|---|
| 32.  11/17/1990 (age 23) | Count 3: Conspiracy to Possession of CDS With Intent to Distribute (Heroin and Cocaine); Circuit Court, Prince George's County, Maryland (CT902185B) | 03/12/1992: Guilty plea to Count 3, 5 years in jail all but 30 days suspended, 2 years unsupervised probation. | 4A1.2(e) | **0**  ½ |

Count1: Possession of CDS With Intent to Distribute (Heroin); Count 2: Possession of CDS With Intent to Distribute (Cocaine); Count 4: Possession of Heroin; Count 5: Possession of Cocaine, were nolle prosequi.

The defendant and another person were observed by police making some possible controlled dangerous substance transactions. When police approached the suspects a piece of paper was thrown on the ground which contained ten packets of heroin. After their arrest the suspects were searched, and seventeen packets of heroin and eight baggies of cocaine were found on the other person.

SCOTT, Mark                                                                 Page 9

| | | | | | | |
|---|---|---|---|---|---|---|
| 33. | 02/15/1991 (age 23) | UCSA Possession of Heroin (Misdemeanor) Superior Court, Washington, DC (M-1678-91) | <u>08/22/1991</u>: 60 days in jail, 30 days suspended, 1 year supervised probation | 4A1.2(e) | <u>0</u> | <u>0</u> |

Details pursuant to this arrest were unavailable and may be attributed to the age of the offense. The information provided was obtained from the DC Superior Court computer database.

Probation records reflect the defendant's probation was terminated unsuccessfully on 10/06/1992.

| | | | | | | |
|---|---|---|---|---|---|---|
| 34. | 05/03/1991 (age 23) | No Permit Superior Court, Washington, DC (T-3218-91) | <u>05/13/1991</u>: Security Forfeited | 4A1.2(c)(1) | <u>0</u> | <u>0</u> |

Details pursuant to this arrest were unavailable and may be attributed to the age of the offense. The information provided was obtained from the DC Superior Court computer database.

| | | | | | | |
|---|---|---|---|---|---|---|
| 35. | 05/13/1992 (age 24) | BRA (Misdemeanor) Superior Court, Washington, DC (M-7244-92) | <u>07/10/1992</u>: Time Served | 4A1.2(e) | <u>0</u> | <u>0</u> |

Details pursuant to this arrest were unavailable and may be attributed to the age of the offense. The information provided was obtained from the DC Superior Court computer database.

| | | | | | | |
|---|---|---|---|---|---|---|
| 36. | 05/23/1992 (age 24) | Count J: Destruction of Property Over $200; Count K: Attempted UUV Superior Court, Washington, DC (F-5410-92) | <u>07/10/1992</u>: 45 days in jail on Count G, and 30 days in jail on Count K to run consecutive to each other. | 4A1.2(e) | <u>0</u> | <u>0</u> |

Count A: Unregistered Gun; Count B: Ammunition Violation; Count C: CDW Gun; Count D: UUA; Count E: Receiving Stolen Goods (Felony); Count F: UUA; Count G: CDW (Felony); Count H: Unregistered Firearm; Count I: Unlawful Possession of Ammunition (Misdemeanor);  were all dismissed pursuant to a plea agreement.

SCOTT, Mark                                                                      **Page 10**

On 05/09/1992 the owner of a 1985 Mercedes reported his vehicle stolen with the Prince George's County, Maryland Police Department. On 05/11/1992 the owner of a 1992 Toyota reported his vehcile stolen with MPD.

On 05/21/1992, MPD officers observed the defendant operating the above Mercedes bearing the temporary Maryland tag issued to the stolen Toyota. The defendant was pursued to the Maryland/Washington, DC border and the pursuant ceased when he crossed in to Maryland. On 05/23/1992, the defendant was again observed by MPD officer operating the Mercedes at 17th and Benning Road, NE. The defendant parked the Mercedes and was apprehended exiting the vehicle. A search of the vehicle revealed a .38 caliber revolver and 48 .38 caliber rounds. The defendant also had a bench warrant for his arrest for failure to appear in case M-5724-92.

| | | | | | | |
|---|---|---|---|---|---|---|
| 37. | 04/13/1993 (age 25) | Permit Revoked OAR Superior Court, Washington, DC (T-2572-93) | <u>08/16/1994</u>: 60 days in jail suspended all but 10 days; 1 year supervised probation | 4A1.2(e) | <u>0</u> | <u>0</u> |

Details pursuant to this arrest were unavailable and may be attributed to the age of the offense. The information provided was obtained from the DC Superior Court computer database.

The defendant's probation was terminated unsuccessful on 10/29/1994.

| | | | | | | |
|---|---|---|---|---|---|---|
| 38. | 07/30/1994 (age 26) | Count F: Simple Assault; Count I: Obstruction of Justice Superior Court, Washington, DC (F-7311-94) | <u>01/09/1995</u>: Count F: 180 days in jail, 5 years supervised probation; Count I: 3 to 9 years ESS to all but 1 year consecutive to Count F. Stay away and no contact with complainant, Sherice Brown. The defendant was released from custody on 12/21/1995. | 4A1.1(a) | <u>3</u> | <u>3</u> |

The defendant was found guilty at trial. He was found not guilty of the following charges: Assault with a Dangerous Weapon, Rape While Armed, and Rape.

The complainant in this case is the defendant's ex-girlfriend and mother of two of his children.

SCOTT, Mark                                                                      **Page 11**

On 07/30/1994, the defendant assaulted the complainant by breaking a bottle over her head, and punching and kicking her. He then proceeded to forcibly rape the complainant. The defendant returned to the complainant's apartment on 08/01/1994 and forced his way inside, and assaulted the complainant again. The defendant was arrested on 08/01/1994 inside the complainant's apartment still in possession of the crowbar he used to force entry.

After being arrested in this case the defendant made dozens of phone calls from custody, and wrote approximately 30 letters to the complainant. In the letters the defendant asked the complainant to drop the charges against him and he would give her money and other material goods in return.

The defendant's probation term was closed on 06/18/1998.

| 39. | 07/02/2002 (age 34) | No Permit Superior Court, Washington, DC (T-4045-02) | 08/28/2002: 90 days in jail ESS to all, 11 months supervised probation. 05/27/2003- Probation revoked, 90 days in jail imposed | 4A1.1(b) | **2** | **¼** |

Details pursuant to the offense were unavailable.

The defendant was sentenced to probation on 08/28/2002, and a probation violation report was submitted on 09/26/2002. The defendant absconded from supervision, as related to the escape case F-2870-03.

| 40. | 08/14/2002 (age 34) | Possession With Intent to Distribute Heroin Superior Court, Washington, DC (F-5268-02) | 09/11/2003: 1 year in jail, 5 years supervised release to follow. | 4A1.1(b) | **2** | **1** |

MPD officers received information that a person fitting the defendant's description was selling heroin at the corner of Central Avenue and Southern Avenue, SE, Washington, DC. Upon arrival on the scene MPD officers conducted surveillance and observed the defendant standing on the corner of Central Avenue and Southern Avenue having brief conversations with individuals that would pull up in cars. The defendant would then get in the vehicles and then exit moments later. After ten minutes of surveillance, the defendant left the corner and entered a store. The was confronted by the MPD officers inside the store. The defendant was asked if he had drugs on him, and he stated "yes in my pocket, but don't lock me up, I can't go to jail." Recovered from the defendant's pocket was 37 packets of heroin.

SCOTT, Mark                                                                                    **Page 12**

| 41. | 05/16/2003<br>(age 35) | Escape<br>Superior Court,<br>Washington, DC<br>(F-2870-03) | 09/11/2003:<br>One year in jail<br>followed by 3 years<br>supervised release<br>consecutive to F-5268-<br>02. Drug treatment<br>while incarcerated. | 4A1.1(b) | **2** | **1** |

On 08/15/2002, the defendant was released in case F-5268-02 on the conditions that he returns to custody for specific hours following release for employment, school, or limited other purposes. On 08/26/2002, the defendant was transferred from DC Jail to a Halfway House located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Washington, DC.

On 09/13/2002, the defendant was authorized to sign out of the halfway house at 8:30am to go to DC Superior Court and was scheduled to return at 12:30pm. The defendant failed to return to the halfway house as instructed and was placed in absconder status.

The defendant was released on supervised release with the Court Services Offender Supervision Agency (CSOSA) in Washington, DC on 04/06/2005. According to his assigned officer, Eric Desjardins, the defendant was not reporting as instructed for office visits, drug tests, or sex offender treatment. According to officer Desjardins, the defendant was required to submit to a sex offender evaluation based on a prior rape charge in case F-7311-94. He failed to cooperate with the treatment process, and a violation was pending prior to the defendant's arrest in the instant offense.

**Criminal History Computation**

42.    The criminal convictions above result in a subtotal criminal history score of 9.

43.    At the time the instant offense was committed, the defendant was under a criminal justice sentence for the sentences imposed on 09/11/2003. Pursuant to USSG §4A1.1(d), two points are added.

44.    The instant offense was committed less than two years following the defendant's release from custody or while in imprisonment or on escape status for the sentence imposed on 09/11/2003. Pursuant to USSG §4A1.1(e), one point is added.

45.    The total of the criminal history points is 12, which establishes a criminal history category of V. USSG Chapter 5, Part A.

46.    Pursuant to the DC Guidelines the defendant's criminal history score is 5 3/4 , resulting in a criminal history category of "D."

SCOTT, Mark                                                    Page 13

### Pending Charges

| | Date of Arrest | Charge | Agency | Status |
|---|---|---|---|---|
| 47. | 01/03/2001 (age 33) | Driving Uninsured Vehicle (0AJ03518) | District Court, Prince George's County, Maryland | 06/10/2003: Failure to appear for trial bench warrant issued |

The defendant was stopped at 9000 Woodyard Road in Prince George's County after being observed operating a vehicle with improperly displayed tags. The defendant's bench warrant is active but non extraditable.

| | | | | |
|---|---|---|---|---|
| 48. | 03/13/2001 (age 33) | Driving Uninsured Vehicle (0AK65621) | District Court, Montgomery County, Maryland | 08/07/2003: Failed to appear for trial, bench warrant issued. |

The defendant was also charged with Operating and Unregistered Vehicle and Displaying Registration Plates Issued to Another Vehicle. The defendant was stopped by police at Georgia Avenue and Silver Spring Avenue in Silver Spring, Maryland, operating a vehicle with tags belonging to a vehicle of another description.

The defendant failed to report for trial and a bench warrant was issued and is still active, but non extraditable.

| | | | | |
|---|---|---|---|---|
| 49. | 05/08/2003 (age 35) | Driving Vehicle on Suspended Out of State License (0BU70908) | District Court, Prince George's County, Maryland | 07/14/2003: Failure to appear for trial bench warrant issued |

The defendant was stopped at Marlboro Pike and Gateway Boulevard in Prince George's County, Maryland for failing to stop at a red light.

**SCOTT, Mark**                                                    **Page 14**

Defendant failed to appear for trial and a bench warrant was issued and is still active, but non extraditable.

| 50. | 05/31/2005 (age 37) | Count A: 1st Degree Sexual Assault: Count B: Kidnapping; Count C: Threat to Injure Person (Felony); Count D: ADW; Count E: Possession of a Firearm During Violent/Dangerous Offense; Count F: 1st Degree Sexual Abuse While Armed; Count G: Possession of a Firearm During Violent/Dangerous Offense; Count H: 1st Degree Sexual Abuse While Armed; Count I: Possession of a Firearm During Violent/Dangerous Offense; Count J: Possession of a Firearm During Violent/Dangerous Offense; Count K: Threat to Injure Person (Felony); Count L: Unregistered Firearm; Count M: Unlawful Possession of Ammunition. (F-3059-05) | Superior Court, Washington, DC | <u>04/20/2006</u>: Status Hearing scheduled before Judge Erik Christian. |

This case is related to the instant offense, and is to be dismissed as outlined in the plea agreement. The defendant was ordered to stay away from the victim, Kimberly Willis.

**<u>Other Arrests</u>**

| <u>Date of Arrest</u> | <u>Charge</u> | <u>Agency</u> | <u>Disposition</u> |
|---|---|---|---|
| 51. 08/29/1989 (age 21) | Count 1: Theft: $300 plus value; Count 2: Unauthorized Use of Motor Vehicle (00009559T4) | District Court, Howard County, Maryland | <u>11/06/1989</u>: Placed on Stet Docket |

SCOTT, Mark                                                                 **Page 15**

| 52. | 09/10/1990 (age 22) | Simple Assault (M-10490-90) | Superior Court, Washington, DC | 09/18/1990: No Papered |
| 53. | 03/24/1991 (age 23) | Simple Assault (M-4901-91) | Superior Court, Washington, DC | 05/11/1991: Nolle Prosequi |
| 54. | 06/30/1991 (age 23) | Simple Assault (M-6951-91) | Superior Court, Washington, DC | 08/22/1991: Nolle Prosequi |

The defendant assaulted the complainant with his fists, causing a severe laceration to the complainant's forehead. The case was nolle prossed in combination with a plea agreement in case M-1678-91 where the defendant pled guilty to Possession of Heroin. The complainant, Sherice Brown, is the same as the victim in case F-7311-94.

| 55. | 09/26/1991 (age 23) | UCSA PWID Heroin (M-11221-91) | Superior Court, Washington, DC | 01/02/1992: Nolle Prosequi |
| 56. | 12/14/1991 (age 24) | Permit Revoked OAR (T-569-92) | Superior Court, Washington, DC | 04/27/1993: Nolle Prosequi |
| 57. | 02/28/1992 (age 24) | Simple Assault (M-2966-92) | Superior Court, Washington, DC | 02/29/1992: No Papered |
| 58. | 04/03/1992 (age 24) | Count A: UUA; Count B: Receiving Stolen Goods (Felony) (F-4082-92) | Superior Court, Washington, DC | 04/16/1992: No Papered |
| 59. | 04/21/1992 (age 24) | Count 1: UUA; Count 2: Simple Assault (M-5724-92) | Superior Court, Washington, DC | 06/17/1992: Dismissed |

On 04/15/1992, the defendant punched the complainant, Sherice Brown, in the head and face numerous times after she failed her driving test. The case was dismissed when the complainant failed to appear for trial.

SCOTT, Mark                                                                    **Page 16**

| | | | |
|---|---|---|---|
| 60. | 05/10/1992 (age 24) | Count A: Permit Suspended OAS; Count B: No Permit (T-4800-92) | Superior Court, Washington, DC | <u>04/27/1993</u>: Nolle Prosequi |

| | | | |
|---|---|---|---|
| 61. | 09/15/1992 (age 24) | Count A: APO; Count B: Simple Assault (F-9829-92) | Superior Court, Washington, DC | <u>09/16/1992</u>: No Papered |

The defendant punched the complainant, Sherice Brown, several times in the face and head. When the police responded, he struck them as they tried to subdue him. The case was dismissed the following day when the complainant decided to obtain a Civil Protection Order against the defendant, rather than pursuing the criminal prosecution.

| | | | |
|---|---|---|---|
| 62. | 05/27/1993 (age 25) | Count A: Simple Assault; Count B: Threats to do Bodily Harm (M-7282-93) | Superior Court, Washington, DC | <u>08/31/1993</u>: No Papered |

The defendant punched the complainant, Sherice Brown, several times. When the police arrived he told the complainant, in the presence of the police officers, that he would "kick her fucking ass whether the police were there or not." The case was dismissed when the complainant did not appear for trial.

| | | | |
|---|---|---|---|
| 63. | 06/16/1993 (age 25) | Disorderly Conduct (D-2400-93) | Superior Court, Washington, DC | <u>08/04/1994</u>: Nolle Prosequi |

| | | | |
|---|---|---|---|
| 64. | 08/12/93 (age 25) | Count A: Threat to do Bodily Harm; Count B: Simple Assault; Count C: Destruction of Property (M-11266-93) | Superior Court, Washington, DC | <u>10/07/1993</u>: Dismissed |

The defendant broke the complainant's apartment windows and told her that he was going to kill her. The case was dismissed when the complainant, Sherice Brown, did not appear for trial.

| | | | |
|---|---|---|---|
| 65. | 05/24/94 (age 26) | UCSA Possession of Cocaine (M-6672-94) | Superior Court, Washington, DC | <u>05/25/1994</u>: No Papered |

SCOTT, Mark                                                                     **Page 17**

**PART C. OFFENDER CHARACTERISTICS**

**Personal and Family Data**

66.    Mark Scott was born on ██████ 1967, in Washington, DC, to Weldon Epps, age
       unknown, and Phoebe Scott, deceased 2001. The defendant has four siblings: Cassandra
       Russ, age 45, resides in Augusta, Georgia is retired from the US Armed Forces and
       currently employed as a teacher; David Scott, age 42, resides in Washington, DC and
       works for the government; Phoebe Scott, age 39, resides at ██████████████████
       Washington, DC and is currently on disability receiving dialysis treatments; Kelly Hayes,
       age 28, resides in Maryland.

67.    The defendant described being reared by an extended family that was very close. His
       father retired from the military. He said he has not seen his father since his mother's
       funeral in 2001, but he believes he resides in Richmond, Virginia. The defendant reported
       his parents separating when he was nine-years old.

68.    Mr. Scott described a normal childhood, and recalled being provided with all he needed,
       and he felt loved by his close extended family.

69.    We spoke with two of the defendant's sisters, Phoebe Scott, and Kelly Hayes. The
       defendant proposed to reside with Phoebe at ██████████████████ Washington, DC
       upon his release. Attempts to contact Phoebe by phone were unsuccessful, so we located
       her at home. Ms. Scott answered the door, but informed the undersigned officer she was
       taking a nap and did not have time to answer any questions about her brother at that time.
       She did convey that she would need to think about whether she would allow defendant to
       reside with her, and was unwilling to commit to that at the time. She agreed to speak with
       us at a later date; one more convenient her. She obliged and a date and time was
       established for a fifteen minute phone interview. We spoke with her as agreed, but she
       refused to answer any questions or speak about the defendant and hung up.

70.    Phone contact was made with the defendant's other sister, Kelly Hayes on 03/02/2006.
       She informed the undersigned officer she was not able to speak with us.

71.    We were able to contact the mother of two of the defendant's eleven reported children,
       Donna Gregory. Ms. Gregory and the defendant have two children in common, ages 6
       and 7. The children are currently in foster care through the DC Department of Child
       Welfare. Ms. Gregory stated she recently went through some "tough times," and her
       children were taken from her, but she intends on petitioning for their return to her. She
       recalled her relationship with defendant as tumultuous. She recalled a specific incident
       when the defendant tried to choke her while threatening to take one of their children from
       her care. She said she "broke up" with the defendant in 2000, but he continued to write
       her letters until 2003 asking her to get back with him. She described the defendant's
       fathering skills as "at his convenience." She said he was not there for their two children
       when they needed him.

72.    The defendant reported having eleven children, but only knows the whereabouts of five of the reported eleven. The child he has in common with the victim in the instant offense is in Washington, DC, along with the two children he had with Ms. Gregory. He reported two other children with the victim listed in case F-7311-94, ages 13 and 14, and believes they are living in Philadelphia, Pennsylvania with their mother. Mr. Scott could not account for the other six children he reported to have fathered. He noted that he did not know their names.

**Physical Condition**

73.    The defendant is 6 feet, 2 inches tall and weighs 260 pounds. He has black hair and brown eyes. The defendant has the following tattoos: a cross on his right bicep, a heart and chain on his left bicep, and design on his left shoulder.

74.    Mr. Scott reported his overall health as "pretty good." He said he suffers from some back discomfort, and was diagnosed with scoliosis as a child. The defendant reported contracting Hepatitis at DC Jail four years ago, but said it is no longer active in his system.

75.    The defendant said he was shot seven times in 1989 by a .22 caliber machine gun, across his groin area. He said he still suffers some stiffness in his left leg from this shooting. He recalled being treated at DC General Hospital for about 2 weeks.

76.    The defendant reported to be currently prescribed Flexeril[3], and Naprosyn[4] at DC Jail. Mr. Scott reported allergies to tuna fish, coconut, bananas, and milk.

---

[3] Flexeril is prescribed to treat pain and stiffness associated with muscle injuries and spasms.

[4] Naprosyn is prescribed to treat pain and joint stiffness associated with arthritis and tendinitis.

SCOTT, Mark                                                                    **Page 19**

### Mental and Emotional Health

77.    The defendant stated that he has never suffered from, or been treated for, any mental or emotional health problems. He reported that he has never sought the professional assistance of a counselor, a psychiatrist, or a psychologist. He was not familiar with any family history of mental illness.

78.    According to records obtain from the DC Department of Corrections, the defendant was housed at Saint Elizabeth's hospital from 10/21/1994 until 01/24/1995. Records obtained from DC Superior Court, reveal the defendant was evaluated to determine competence in case F-7311-94. A report was filed on 11/14/1994, by the DC Department of Mental Health Service deeming the defendant fully competent for court proceedings in case F-7311-94.

### Substance Abuse

79.    The defendant did not admit to any substance abuse. He stated he completed a four month drug treatment program at the Correctional Treatment Facility (CTF) in 1993 because it was ordered in a DC Superior Court case.

80.    According to the defendant's CSOSA officer, the defendant did not test positive for any substances during his short time on supervision from 04/2005 to 05/2005. He tested negative for illegal substances at the time of his arrest in this case.

### Educational and Vocational Skills

81.    Mr. Scott reported graduating from H.D. Woodson senior high school in Washington, DC in 1988. He said he obtained training in electrical wiring in 1988 at the Phelps Training Center affiliated with Spingarn senior high school.

82.    He recalled having an electrical contracting license, and a being skilled in masonry, construction, and automobile maintenance.

**SCOTT, Mark**                                                                     **Page 20**

### Employment Record

83.    At the time of the instant offense the defendant was unemployed.  The defendant will be unemployed at sentencing.

84.    Mr. Scott reported to be doing odd "handyman" type jobs at the time of his arrest. According to the defendant's CSOSA officer, he reported no employment.

85.    He recalled the last time he was employed was while at Bannum halfway house from 02/03/2005 to the date of his release. Mr. Scott said he worked with Macy Construction in Prince George's County, Maryland earning $600 every two weeks. He said he left because the work was slow.

### Financial Condition: Ability to Pay

| | |
|---|---:|
| **Cash** | |
| **Subtotal:** | **$.00** |
| | |
| **Unencumbered Assets:** | |
| **Subtotal:** | **$.00** |
| | |
| **Equity in Other Assets** | |
| **Subtotal:** | **$.00** |
| | |
| **Total Assets:** | **$.00** |
| | |
| **Unsecured Debts** | |
| Medical Bill (in collections) | $271.00 |
| Comcast Cable | $307.00 |
| Delinquent Child Support (Washington, DC) | $4,769.00 |
| **Total Unsecured Debt:** | **$5,347.00** |
| | |
| **NET WORTH:** | **($5,347.00)** |
| | |
| **Monthly Cash Flow** | |
| **Income** | |
| **Total Income:** | **$.00** |
| | |
| **Necessary Living Expenses** | |
| **Total Expenses:** | **$.00** |
| | |
| **NET MONTHLY CASH FLOW:** | **$.00** |

SCOTT, Mark                                                                                    **Page 21**

86.    The defendant did not report having any assets, income, or monthly expenses.

87.    A credit report from Equifax Credit Information Services, an unverified source of information, revealed multiple outstanding debts represented in the table above. A check of Lexis Nexis, a verified source of information did not reveal any liens or judgements against the defendant.

88.    Defense counsel is appointed. Based upon the defendant's current financial profile and future earning capacity, he does not have the resources to satisfy a fine.

## PART D. SENTENCING OPTIONS

### Custody

89.    **Statutory Provisions:** (Count 1)  The maximum term of imprisonment is 10 years for this Class C felony. 18 USC §§ 922(g)(1) and 924(a)(2).

90.    **Statutory Provisions:** (Count 2)  The maximum term of imprisonment is 15 years for this offense. 22 DCC §§ 3002(1) and 3018.

91.    The defendant is subject to lifetime sex offender registration pursuant to 22 DCC §§ 4001(6)(D) and 4002(b)(1).

92.    **Guideline Provisions:** (Count 1) Based on a total offense level of 37 and a criminal history category of V, the guideline range for imprisonment is 324 to 405 months. USSG Chapter 5, Part A.

93.    **DC Guideline Provisions:** (Count 2) The DC Guidelines rank all felony offenses in the DC Code in groups by level of severity. The offense severity is based on the offense of conviction. In this case, **Count 2** is in Group 6. If the Court determines a sentence of imprisonment is warranted, the voluntary guideline range for a Group 6 offense and a Criminal History Score of 5 3/4 (Category D) is 36-78 months.

94.    Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence. USSG § 5G1.1(a). The guideline range for Count 1 is 324 to 405 months but the statutory maximum is 120 months resulting in a guideline range of 120 months. USSG § 5G1.1, comment. (backg'd).

95.    If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law. USSG § 5G1.2(d).

SCOTT, Mark                                                    **Page 22**

### Impact of Plea Agreement

96.     The plea agreement facilitated a three-level reduction for acceptance of responsibility. The government also agreed to dismiss the pending case in DC Superior Court (F-3059-05). All other relevant conduct was considered and applied through the guideline calculations.

### Supervised Release

97.     **Statutory Provisions:** (Count 1) If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years. 18 USC § 3583(b)(2).

98.     **Guideline Provisions:** (Count 1) The guideline range for a term of supervised release is at least two but not more than three years. USSG §5D1.2(a)(2).

99.     If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional. USSG §5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute. USSG §5D1.1(a).

100.    **Statutory Provisions:** (Count 2) If a term of imprisonment of more than one year is imposed, the Court shall impose a term of supervised release of 3 years. 24 DCC § 403.01(b)(2)(B). If a term of imprisonment of one year or less is imposed, the court shall impose a term of supervised release not to exceed 3 years. 24 DCC § 403.01(b)(3)(B).

### Probation

101.    **Statutory Provisions:** (Count 1) The defendant is not eligible for probation if he will be sentenced at the same time to a term of imprisonment for a different offense that is not a petty offense. 18 USC § 3561(a)(3).

102.    **Statutory Provisions:** (Count 2) The defendant is eligible for a term of probation, which shall not exceed five years, for each count of conviction that violates the DC Criminal Code. Should the Court chose to impose a term of probation, the Court may 1) suspend the imposition of sentence, 2) impose the sentence and suspend the execution of the sentence, 3) or impose the sentence and suspend the execution of a portion of the sentence. 16 D.C. Code § 710 and 710(b).

103.    Terms of probation are to be served concurrently. 18 USC § 3564(b).

104.    **Guideline Provisions:** (Count 1) Because the applicable guideline range is in Zone D of the Sentencing Table, the defendant is not eligible for probation. USSG §5B1.1, comment. (n.2), and USSG §5C1.1(f).

105.    **DC Guidelines Provisions:** (Count 2) According to the DC Guidelines calculation, the defendant is eligible for prison only.

### Mandatory Drug Testing

106.    The Violent Crime Control and Law Enforcement Act of 1994 requires that an individual under supervision, whose offense occurred after September 13, 1994, shall refrain from the unlawful use of a controlled substance; shall submit to one drug test within fifteen days of the commencement of supervision; and shall submit to two additional periodic drug tests. The condition for mandatory drug testing may be ameliorated or suspended by the Court if reliable sentencing information indicates a low risk of future substance abuse by the defendant. 18 USC §§ 3563(a)(5) and 3583(d).

### DNA Requirement

107.    Pursuant to 42 USC § 14135a, for all felony offenses, the defendant shall submit to the collection and use of DNA identification information while incarcerated in the Bureau of Prisons, or at the direction of the U.S. Probation Office.

### Fines

108.    **Statutory Provisions:** (Count 1) The maximum fine is $250,000. 18 USC § 3571(b)(3).

109.    **Statutory Provisions:** (Count 2) The maximum fine is $125,000. 22 DCC §§ 3002(1) and 3018.

110.    An assessment fee must be imposed for each count of conviction in violation of the DC Criminal Code that was committed on, or after, December 5, 1996. The assessment fee imposed for each serious traffic or misdemeanor offense must be between $50 and $250, while the assessment fee imposed for each felony offense must be between $100 and $5,000. Assessment fees may not be waived and are due when ordered. However, the fees may be collected during a term of incarceration, probation, parole, or supervised release. Assessment fees are to be made payable to the Criminal Finance Office, Room 4203, DC Superior Court, 500 Indiana Avenue, NW, Washington, DC, for deposit into the Crime Victims Compensation Fund. 4 DCC § 516.

111.    A special assessment of $100 for Count 1 is mandatory. 18 USC § 3013(a)(2)(A). The special assessment remains unpaid.

112.    **Guideline Provisions:** The fine range for Count 1 is from $20,000 to $200,000. USSG §5E1.2(c)(3).

**SCOTT, Mark**                                                          **Page 24**

113.    In determining the fine amount, the Court shall consider, among other factors, the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence.  18 USC § 3572(a)(6) and USSG §5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests that the Court use a monthly cost of $1,933.80 for imprisonment, a monthly cost of $1,675.23 for community confinement, and a monthly cost of $287.73 for supervision.

## Restitution

114.    The Court may, as a condition of probation or as a sentence itself, require a defendant to make restitution.   16 D.C. Code §711.   The Court shall fix the manner in which restitution is to be paid.  Restitution may be awarded to any victim(s) of a crime of violence, in accordance with compensation requirements set forth in 3 D.C. Code §128.  Victims of Violent Crimes Emergency Amendment Act of 1996.  Restitution shall be payable directly to the Crime Victims Compensation Fund for eventual distribution to the awardee.

SCOTT, Mark                                                                      Page 25

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

115.    The Probation Office has identified information that would suggest an upward departure based on inadequacy of criminal history from the prescribed sentencing guidelines may be warranted. USSG §4A1.3(a)(1). If the convictions listed in paragraphs 32, 33, and 36 were countable, the defendant would have been subjected to an additional four criminal history points, for a total of 16 criminal history points, category VI. The defendant also has multiple arrests for crimes of a nature similar to the instant offense listed in the "Other Arrests" section, that did not result in criminal convictions. USSG §4A1.3(a)(2)(E).

116.    The court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's. USSG § 4A1.3(4)(A).

117.    In accordance with 18 USC §3553(a), which outlines the factors to be considered when imposing a sentence, the Court may wish to consider a sentence that: promotes respect for the law, 18 USC §3553(a)(2)(A); protects the public from future further crimes of the defendant, 18 USC §3553(a)(2)(C); and provides adequate deterrence to criminal conduct, 18 USC §3553(a)(2)(B).

Respectfully submitted,

RICHARD A. HOUCK, JR.
CHIEF UNITED STATES PROBATION OFFICER

By:    _____
Michael Penders
United States Probation Officer

APPROVED BY:

_____    3-14 2006
Mark McCroson                              Date
Supervising United States Probation Officer